UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WALTER EARL MCDONALD, TDCJ #02046782, | § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-19-1398 |
| LORIE DAVIS, | § § § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner, Walter Earl McDonald (TDCJ #02046782), is a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). McDonald filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction for aggravated assault with a deadly weapon. Respondent has filed a motion for summary judgment (Doc. No. 11). McDonald has not filed a response in opposition, and his time to do so has expired. After carefully considering the petition, motion for summary judgment, record, and applicable law, the Court concludes that this petition must be dismissed for the reasons that follow.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

On January 25, 2016, McDonald was convicted of aggravated assault with a deadly weapon after a jury trial in the 263rd Judicial District Court of Harris County, Texas, in cause number 1449066.[1]  He is serving a 20-year sentence as a result of that conviction.[2]

---

[1] *See* Petition, Doc. No. 1, at 1; *see also* State Habeas Corpus Record ("SHCR") at 107-08, Doc. No. 12-33 at 52-53. Citations following "Doc. No. ---" reflect the Clerk's pagination as stamped by the CM/ECF system; citations to state court records otherwise reflect the pagination according to the Bates stamp on the bottom of the page of those records.
[2] Petition at 2.

The state intermediate appellate court affirmed his conviction, summarizing the facts as follows:

> Va–Shawn Cobbins and her sister Nina Robinson bake pastries out of their home. On the morning of November 2, 2014, they went to a corner store to deliver pastries to a customer. At trial, Cobbins and Robinson testified that, while at the corner store, they were joking with McDonald and two other men identified as Sonny and Wayne. According to Cobbins and Robinson, Wayne jokingly told McDonald that he was going to steal his woman, referring to Robinson. Both Cobbins and Robinson testified that, in response, McDonald reached in his pocket and pulled out a pocket knife in jest. Neither Cobbins nor Robinson could recall specific details about the pocket knife, other than the blade being silver. After that, McDonald left with Robinson.
>
> Later that day, Cobbins and Robinson stopped at another gas station down the street where they again ran into McDonald. McDonald was with his daughter, Mary, and his daughter-in-law. McDonald approached Cobbins and Robinson's car to talk to them through the driver's side window, where Robinson was sitting. Mary approached the car and told McDonald "don't be giving these whores your money." Robinson asked McDonald to get his daughter away from them because she was not talking to her. In response, McDonald slapped Robinson in the head, knocking her glasses off of her face. Robinson exited the car and she and Mary began to physically fight. Cobbins then exited the passenger side of the car and tried to break up the fight. Mary hit Robinson again and McDonald and his daughter-in-law approached the fight. In the commotion, Cobbins was stabbed and fell to the ground. Thereafter, McDonald, Mary, and McDonald's daughter-in-law backed away from the car and left the scene. Robinson called 911 and EMS transported Cobbins to the hospital. The police took a statement from Robinson at the scene in which she identified McDonald as the person who stabbed Cobbins. Cobbins also identified McDonald as the person who stabbed her.
>
> At trial, the State presented the testimony of Officer T. Fay, Cobbins, Robinson, and Officer E. Cerpas. The State also presented footage from the gas station security camera that captured the incident. First, Officer Fay testified that when he arrived at the scene, he saw blood and an ambulance tending to Cobbins. McDonald was not at the scene. He stated that Robinson told him that she and Mary had gotten into a fight after Mary told McDonald not to give her and Cobbins money. Robinson explained that Cobbins was trying to break up the fight when she got stabbed. According to Officer Fay, Robinson identified McDonald as the suspect. Officer Fay testified that Cobbins "gave pretty much the same statement" and that he found Cobbins's and Robinson's statements credible.

*2 Cobbins testified next and narrated the events as the jury watched the video recording of the incident. According to Cobbins, the video shows McDonald approach her by the door of the driver's side of the car and stab her, after which she falls to the ground. She stated that she "hit the ground" and "felt this sting, a pinch." She did not immediately know she had been stabbed but realized it once she hit the ground. Cobbins testified that she next heard Mary say "You stabbed her, Daddy. Let's go." She said that, at that point, she looked down and saw blood and started yelling at McDonald that he stabbed her. According to Cobbins, she immediately got up and paced around, then went after McDonald and maced him in his car. She stated she was in shock and initially did not realize the extent of her injury but eventually started feeling dizzy. She testified that her sister called 911 and an ambulance transported her to the hospital. Cobbins testified that she immediately had surgery to repair a punctured liver. The State introduced Cobbins's medical records which state that Cobbins had "a high probability for imminent life or organ-threatening emergency medical condition" and that she suffered from a "liver laceration, moderate, with open wound assault by cutting piercing instrument."

Robinson testified to the same version of events. According to Robinson, she did not know Cobbins had been stabbed until she heard Cobbins say "You stabbed me." Robinson testified that she heard Mary say "Come on, Daddy. Let's go. Let's go. You stabbed her." She stated that Mary rushed McDonald away from the scene. Robinson testified that she then called 911. The State introduced the audio recording of Robinson's 911 call in which Robinson identified McDonald as the individual who stabbed Cobbins.

Officer E. Cerpas also testified at trial. He stated that he read Officer Fay's report and investigated the incident. As part of his investigation, Officer Cerpas spoke to Cobbins when she was in the hospital and observed her stab wound. He stated that the doctors informed him that Cobbins's wound was about four and a half centimeters deep and a few inches wide. Officer Cerpas testified that, based on his training and experience, he concluded that a knife was used in inflicting the wound. Officer Cerpas further testified that stabbing someone with a knife could cause death or serious bodily injury. Officer Cerpas testified that he spoke with medical personnel at the hospital who verified that the stab wound penetrated Cobbins's liver and that she had a laparoscopy. He testified that he also took statements from Cobbins and Robinson, both of whom identified McDonald as the individual who stabbed Cobbins.

According to Officer Cerpas, he conducted two interviews with McDonald in the days after the incident. Officer Cerpas stated that McDonald admitted to being at the scene and knew that a stabbing had taken place before Officer Cerpas told him. According to Officer Cerpas, McDonald denied stabbing Cobbins but at one point speculated that his daughter Mary "may have had a knife." Officer Cerpas stated that McDonald's statements were inconsistent and that the surveillance video is consistent with Cobbins's statement but inconsistent with McDonald's.

> The defense next presented the testimony of Lee Tollfree, who was also at the gas station when the stabbing took place. According to Tollfree, he drove McDonald to the gas station the day of the incident. Tollfree testified that someone maced McDonald and that he was stumbling towards the store so they fled the scene to rinse off McDonald's face. Tollfree testified that he did not see McDonald with a knife or hear him mention that he stabbed anyone.
>
> McDonald testified and denied stabbing Cobbins. He stated that he does not carry a knife and did not pull one out when he first saw Cobbins and Robinson at a corner store earlier in the day. He admitted that he slapped Robinson because he did not like the way she spoke to his daughter. But he stated that he did not stab Cobbins and did not have a knife with which to stab her. According to McDonald, the day after the incident, his daughter-in-law told him that she had stabbed Cobbins. McDonald stated that he lied to the investigator for his daughter-in-law. McDonald also testified that he had a criminal history which included a charge for drugs and assault.

*McDonald v. State*, No. 01-16-00077-CR, 2017 WL 711742 (Tex. App.—Houston [1st Dist.] Feb. 23, 2017, pet. ref'd). McDonald filed a state application for habeas corpus on February 15, 2018, and McDonald's trial counsel, Darrell W. Jordan, Jr., submitted an affidavit in the state habeas court regarding McDonald's ineffective assistance claims.[3] The state habeas court issued findings of fact and conclusions of law holding that McDonald did not establish that his counsel's assistance was ineffective.[4] On March 27, 2019, the Texas Court of Criminal Appeals denied McDonald's habeas application without written order.[5]

## II. CLAIMS

McDonald asserts the following claims in his federal petition:

1. Ineffective assistance of trial counsel for failing to investigate and call alibi witnesses Mary and Kiesha McDonald;

2. Ineffective assistance of trial counsel for failing to present an opening argument;

---

[3] SHCR at 2-23, Doc. No. 12-32 at 4-26; Supplemental SHCR ("Supp. SHCR") at 25-26, Doc. No. 12-31, at 27-28.
[4] Supp. SHCR at 27-32.
[5] Doc. No. 12-21, at Action Taken Sheet.

3. Ineffective assistance of trial counsel for failing to file a motion in limine to prevent the admission of his prior criminal history while testifying; and

4. Ineffective assistance of trial counsel for failing to present expert testimony to rebut the State's medical reports of serious bodily injury to the victim.

## III. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified as amended at 28

U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter*, 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. For AEDPA to apply, a state court need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits." *Id.* at 98-99.

To the extent that the petitioner exhausted his claims, they were adjudicated on the merits by state courts. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* (noting

that "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable"). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id.* (citation omitted); *see also Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter,* 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir. 1992).

## IV. DISCUSSION

The Constitution guarantees a fair trial for criminal defendants through the Due Process Clause, but the Sixth Amendment, which conveys the right to have the effective assistance of counsel, largely defines the basic elements of a fair trial. *See* U.S. CONST. amend. VI; *Strickland*

*v. Washington*, 466 U.S. 668, 685 (1984); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (observing that "the right to counsel is the right to the effective assistance of counsel"). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Thus, to prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006).

To prove prejudice, the second prong under *Strickland*, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Because McDonald's ineffective-assistance claims were rejected on state habeas review, the central question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro*, 550 U.S. at 478). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* When applied together with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); *Beatty v Stephens*, 759 F.3d 455, 463 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2312 (2015) (same).

### A. Failure to Investigate and Call Alibi Witnesses (Ground 1)

McDonald alleges that his trial counsel rendered ineffective assistance because he did not conduct an adequate investigation and interview his alibi witnesses: his daughter, Mary McDonald, and his daughter-in-law, Kiesha[6] McDonald. McDonald claims that Mary and Kiesha showed up at trial ready to testify, but that counsel told them they were not needed. McDonald alleges that their testimony was valuable because they could have impeached the State's witness and provided testimony that he did not stab Cobbins by stating that another female did.

"Generally, complaints that trial counsel failed to call a witness are 'not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's

---

[6] The petitioner refers to this individual as "Kiesha" and trial counsel and the state habeas court refer to her as "Keisheia." The Court refers to this individual as "Kiesha."

domain.'" *King v. Davis*, 883 F.3d 577, 590–91 (5th Cir.), *cert. denied*, 139 S. Ct. 413 (2018) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)); *see also Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (emphasizing that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative") (citations omitted). There is a strong presumption that the decision not to call a witness was a strategic one. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984); *Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984) (noting that "the failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice"). The Fifth Circuit has recently held that it was reasonable defense strategy not to call additional witnesses where such testimony would "distract[] the jury and overtax[] its credibility." *King*, 883 F.3d at 591 (citing *Richter*, 562 U.S. at 107; *Florida v. Nixon*, 543 U.S. 175, 191–92 (2004); *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984)).

> In response to the allegation that he failed to call these witnesses, trial counsel stated:
>
> I did not believe it was necessary or beneficial to interview and subpoena the applicant's daughters, Mary McDonald and [Kiesha] McDonald to testify. After watching the video, I saw things in the video that would hurt my client and having his family present and testifying could be turned against us. Over the years the defendant's family would call me and state they had altercations with the defendant and he was going to be arrested. They would curse me out over the phone and in my office. It was my belief that they would have hurt our case.[7]
>
> The state habeas court found trial counsel's affidavit to be credible and further found that counsel "objectively reasoned that it was neither necessary nor beneficial to [McDonald's] case to call Mary McDonald or [Kiesha] McDonald to testify on [McDonald's] behalf."[8]
>
> A review of the trial record reflects that the jury saw the video evidence, from which they could have concluded that McDonald stabbed Cobbins. The jury saw the medical record and

---

[7] Supp. SHCR at 26.
[8] *Id.* at 28 (Finding of Fact No. 12).

evidence showing that Cobbins had suffered a lacerated liver from a knife or similar sharp cutting object and that she required life-saving surgery. The jury saw photographs of Cobbins's injury and the blood at the scene. The jury also heard from Cobbins and her sister, who testified that McDonald stabbed Cobbins and that Mary stated, "You stabbed her, Daddy, let's go."[9] The jury heard McDonald's testimony regarding the incident, including his denial and his allegation that someone else stabbed Cobbins, and they could draw credibility determinations from the testimony of these witnesses in conjunction with the video evidence.

McDonald does not overcome the strong presumption that trial counsel made a strategic decision not to put Mary or Kiesha on the stand, based on the video evidence in the record and his interactions with McDonald's family. Counsel stated that it was his belief that their testimony would have hurt McDonald's case because, after watching the video and based on his knowledge of past altercations between McDonald, Mary, and Kiesha, he believed that Mary and/or Kiesha's testimony could be turned against McDonald. Counsel's professional determination not to place Mary or Kiesha on the stand, under these circumstances, was not objectively unreasonable.

In addition, McDonald fails to show actual prejudice from trial counsel's decision not to call Mary or Kiesha. As set forth above, the jury heard and saw ample evidence regarding the incident, and McDonald does not show that Mary or Kiesha's testimony would have caused the result of his trial to be any different. The state court's conclusion that trial counsel provided reasonably effective assistance regarding his decision not to call these witnesses was not contrary to, or an unreasonable application of the Supreme Court's precedent as set forth in *Strickland*, nor was it an unreasonable determination of the facts in light of the record as a whole. *See* 28 U.S.C. § 2254(d). Accordingly, McDonald is not entitled to habeas relief based on this claim.

---

[9] *See McDonald*, No. 01-16-00077-CR, 2017 WL 711742, at *2.

## B. Failure to Present an Opening Statement (Ground 2)

McDonald also faults trial counsel for not presenting an opening statement to the jury. "Courts routinely hold that waiver of opening statement is not unreasonable, given the presumption of competence afforded counsel." *King*, 883 F.3d at 593 (citing *Malicoat v. Mullin*, 426 F.3d 1241, 1260–61 (10th Cir. 2005); *United States v. Rodriguez–Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985) ("The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel.")). "The decision of whether to present an opening statement falls within the zone of trial strategy." *Murray*, 736 F.2d at 283 (citing *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965)).

Regarding an opening statement, trial counsel stated:

> It was not necessary or beneficial to make an opening statement at trial in the primary case. It was part of my strategy not to make an opening statement. I don't like to tell the jury about my version of the case because the state can then address the points I made in opening statement. Also, during my primary case, we anticipated getting a witness to come to court, but he had not yet arrived, so I didn't want to promise that he would testify when I wasn't sure that he would arrive for trial.[10]

As trial counsel explains, he made a strategic decision not to present an opening statement in order to avoid revealing his case to the prosecution, who could adjust its strategy to address his arguments. This is a reasonable consideration. *See, e.g., Williams*, 354 F.2d at 702 (noting that not giving an opening statement is likely the wiser course to follow where the defense's case is weak); *see also Richter*, 562 U.S. at 94 (noting that the defense's decision to present an opening statement was a poor strategic choice — but not ineffective assistance of counsel — because it allowed the prosecution to adjust its case).

---

[10] Supp. SHCR at 26.

The state habeas court found that "trial counsel objectively reasoned that it was neither necessary nor beneficial to [McDonald's] case to make an opening argument" in his trial.[11] McDonald does not indicate how trial counsel's decision to forego an opening statement caused him actual prejudice other than his conclusory assertions that it hurt his case. Conclusory allegations of ineffectiveness are insufficient to demonstrate deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009) (citations omitted). McDonald does not meet his burden to show that trial counsel was ineffective or that the lack of an opening statement prejudiced him.

The state habeas court's conclusion that the decision to forego an opening statement was not ineffective assistance of counsel was not contrary to, or an unreasonable application of, *Strickland*, nor was it an unreasonable determination of the facts based on the record. Accordingly, McDonald is not entitled to relief on this ground.

### C. Failure to File a Motion in Limine (Ground 3)

McDonald claims that trial counsel's failure to file a motion in limine to object to the inclusion of his prior criminal history was ineffective assistance of counsel. In response to this allegation, trial counsel stated:

> Once the defendant expressed his desire to take the stand, I knew from having worked with him for years that he would not be able to handle cross-examination and would open the door to his criminal history. The strategy was to lay everything on the line, be honest and direct with the jury, and state that the defendant was not guilty of stabbing the complaining witness.[12]

The record reflects that McDonald testified on his own behalf and that trial counsel asked him about his prior convictions on direct examination. The state habeas court found that McDonald failed to show ineffective assistance of counsel on this claim because McDonald

---

[11] Supp. SHCR at 28-29 (Finding of Fact No. 13).
[12] Supp. SHCR at 25; Doc. No. 12-31 at 27.

chose to testify, opening the door to admission of his prior criminal history.[13] In light of McDonald's decision to testify and the fact that he had prior convictions that could be raised on cross-examination, trial counsel's decision to raise the issue on direct examination, where McDonald could be honest and direct with the jury to make his case, was not unreasonable. Further, a motion in limine under these circumstances would be futile.

Counsel is not ineffective for failing to file a futile motion. *Murray*, 736 F.2d at 283 ("Counsel is not required to engage in the filing of futile motions."); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ."). Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, McDonald fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted).

The state habeas court concluded that McDonald did not to show that trial counsel's representation fell below an objective standard of reasonableness or that, but for counsel's failure to file a motion in limine, the result of the proceeding would have been different.[14] This conclusion is not contrary to, or an unreasonable application of *Strickland*, nor is it an unreasonable application of the facts based on the record. Therefore, McDonald fails to show that he is entitled to habeas relief on this ground.

### D. Failure to Present Knife Wound Expert Testimony (Ground 4)

McDonald faults his counsel for not presenting a knife wound expert to testify regarding the extent of Cobbins's wound. Trial counsel responded to this allegation in his affidavit:

---

[13] *Id.* at 28 (Finding of Fact No. 9).
[14] Supp. SHCR at 28 (Finding of Fact No. 9), 30 (Conclusion of Law No. 4).

> No, I didn't believe it was necessary or beneficial to present expert testimony to rebut the State's medical record. Our defense was based on the premise Mr. McDonald was not the cause of the injuries. Trying to undercut the testimony of a stab victim may have turned the jury against us. Whereas accepting her testimony and then explaining that my client was not the cause was the better strategy.[15]

At trial, the prosecution presented substantial medical evidence that Cobbins sustained potentially life-threatening injuries from being stabbed with a knife. The state habeas court found that "trial counsel objectively reasoned that it was neither necessary nor beneficial to [McDonald's] case to present expert testimony to rebut the State's medical reports of serious bodily injury to [Cobbins]."[16] According to trial counsel, he reasoned that showing that McDonald was not the cause of the injuries was a better strategy than trying to challenge the medical records and pictures which depicted a stab wound that lacerated Cobbins's liver and required surgery.

"'To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *King*, 883 F.3d at 590–91 (citing *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010); *Alexander*, 775 F.2d at 602)). McDonald does not identify the expert that trial counsel should have called, demonstrate that such an expert would have testified and the substance of such testimony, nor shown that the testimony would have been favorable to his case. In sum, McDonald does not show that the failure to call an expert on knife wounds caused him actual prejudice.

The state habeas court concluded that McDonald did not to show that trial counsel's representation fell below an objective standard of reasonableness or that, but for counsel's failure

---

[15] Supp. SHCR at 25.
[16] *Id.* at 28 (Finding of Fact No. 11).

15 / 17

to call an expert on knife wounds, the result of the proceeding would have been different.[17] The state habeas court's conclusion that the totality of trial counsel's representation afforded McDonald reasonably effective assistance of counsel is not contrary to, or an unreasonable application of, *Strickland*, nor is it an unreasonable application of the facts based on the record as a whole. Accordingly, McDonald is not entitled to habeas relief on this ground.

McDonald does not meet his burden to show ineffective assistance of counsel for any of his stated grounds for habeas relief. Therefore, his petition is dismissed with prejudice.

V.      **CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

---

[17] Supp. SHCR at 28 (Finding of Fact No. 11), 30 (Conclusion of Law No. 4).

16 / 17

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, the Court concludes that jurists of reason would not debate whether the Court's ruling in this case was correct. Therefore, a certificate of appealability will not issue.

## VI. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Doc. No. 11) is **GRANTED**.

2. The habeas corpus petition is **DISMISSED** with prejudice.

3. All other pending motions, if any, are **DENIED as MOOT**.

4. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this \_\_\_\_11th\_\_\_\_ day of February 2020.

_____
ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE